## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

|  |  |  |
|---|---|---|
| THE CELINA MUTUAL INSURANCE COMPANY, a member of a pool of companies known as Celina Insurance Group, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | NO. 3:14-CV-1616 |
| vs. | ) ) | |
| DANIEL L. GALLAS, CATHERINE D. GALLAS, FINISHING TOUCH CLEANING SERVICE, INC., GEOFFREY WENDT, NADIA WENDT, and WINDAM BREMER as Trustee of The Zenonas Puzinauskas Daughters' Family Trust, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Plaintiff, The Celina Mutual Insurance Company ("Celina"), on March 3, 2016 (DE #49). For the reasons set forth below, Celina's Motion for Summary Judgment (DE #49) is **GRANTED**. The Clerk of the Court is **DIRECTED** to enter a **DECLARATORY JUDGMENT** in favor of Celina declaring that under insurance policy number 7114353-0, The Celina Mutual Insurance Company has no duty to

defend or indemnify Daniel L. Gallas, Catherine D. Gallas, and/or Finishing Touch Cleaning Service, Inc., against claims asserted by Geoffrey Wendt, Nadia Wendt and Windham Bremer as trustee of The Zenonas Puzinauskas Daughters' Family Trust (whether individually or jointly) in case number 46D02-1303-CT-508 in the LaPorte County, Indiana, Superior Court.

BACKGROUND

Celina filed this declaratory judgment action seeking a determination as to whether it owes a duty to defend or indemnify Defendants Finishing Touch Cleaning Service, Inc. ("Finishing Touch"), Daniel L. Gallas, and Catherine D. Gallas (together, "Gallas Defendants") for claims brought by Defendants Geoffrey Wendt, Nadia Wendt, and Windam Bremer as Trustee of The Zenonas Puzinauskas Daughters' Family Trust (together, "Wendt Defendants") in a lawsuit pending in Indiana state court. In that lawsuit, the Wendt Defendants allege that they hired Finishing Touch to clean the glass in the windows and doors of their home in Beverly Shores, Indiana, and that Finishing Touch damaged parts of the windows and doors in doing so. Celina is defending the Gallas Defendants in the underlying lawsuit under a reservation of rights.

Celina filed a motion for summary judgment on the issue of whether it is obligated to defend and indemnify the Gallas Defendants in the underlying lawsuit. Celina argues that the

claims in the underlying lawsuit are excluded from coverage under the insurance policy at issue. The Wendt Defendants and the Gallas Defendants (together, "Defendants") filed responses to the motion, maintaining that the claims are not excluded from coverage. The Gallas Defendants also argue that Celina waived its right to deny coverage or is estopped from denying coverage.

SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely on allegations in

his own pleading, but rather must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted).

The party with the burden of proof on an issue can obtain a summary judgment "only where the evidence is so one-sided that it points inescapably" in the movant's favor, and "every reasonable jury" would decide that the movant has met its burden of proof. *Thorne v. Member Select Ins. Co.,* 899 F. Supp. 2d 820, 824 (N.D. Ind. 2012) (citations omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).


FACTS

The Underlying Lawsuit

Geoffrey Wendt ("Wendt") and Nadia Wendt (together, the "Wendts") hired Finishing Touch to clean the glass in the windows and doors of their home in Beverly Shores, Indiana, in June 2011.[1] After Finishing Touch's employees finished their work at the

---

[1] The Wendts lived in the home and were beneficial owners of the home at all times pertinent to this litigation.

Wendts' home, Wendt noticed white stains and spots on the glass, though the glass itself was not damaged. He contacted Daniel Gallas ("Gallas"), the owner of Finishing Touch, and asked that the employees return to the home and remove the spots from the glass in the windows and doors. According to Wendt, his agreement with Gallas was only for removing the spots on the glass, it was not to wipe down or clean, or perform any work on any portions of the home other than the glass. (DE #55-2, ¶7.)

In August 2011, two of Finishing Touch's employees returned to the Wendts' home. Gallas testified that he told the employees to use a liquid product called OneRestore to remove the spots from the glass. The label of the OneRestore container instructs the user to "[a]lways test a small area first to determine applications and dwell time," "not allow product to dry on surface," and rinse the product off by using "a thorough, high pressure rinse." (DE #55-6 at 7.) Gallas testified that he instructed the employees to "spray the window [with OneRestore], and use your window apparatus tools to apply water to rinse it off the window, and clean the window like you would normally clean the window, squeegee it off and wipe it off, wipe off the frames with their rags." (DE #50-5 at 5.) He testified that Finishing Touch "was hired to clean glass," and that while he instructed the employees "to clean the windows," this meant "to clean the glass" to them. (*Id.* at 6.) He also testified that when the employees "do a window-cleaning

job, the water is gonna get on the frame, no matter what you do. So, they're trained to wipe off the frame. . . . That's where the water drips." (*Id.* at 7.)

One of the Finishing Touch employees explained the process he used to clean the glass with OneRestore:

> [We] [g]ot our spray bottle, we sprayed the window, the glass part, and as soon as we got done spraying the window we used our sponge with the soapy water and we used a squeegee to get it off. And, you know, we wiped where the water sits on – like, because when we wiped with the squeegee, water usually goes down, right, so we wiped the bottom frame.

(DE #50-4 at 6.) He did his "best just to spray the glass." (*Id.* at 7.) The other employee testified that "[w]e just spray on the glass and right away with the sponge with the water and so we try to clean it up and then squeegee. And just dry a little bit of water that runs in the frame and that's it." (DE #50-3 at 7.) When asked what precautions were taken to prevent OneRestore from coming into contact with the window frames, sills, or cladding, he testified that "[w]e just dried it off with a towel. Any water or liquid that comes out, we dried it off with a towel." (*Id.* at 8.) The Finishing Touch employees removed the spots from the glass using OneRestore without damaging the glass.

After the Finishing Touch employees had left the home, Wendt observed that the glass was clean and the water spots had been removed, but that the paint around the glass in the windows and doors was bubbling and blistering, and some paint was sliding off.

He also observed that the silicone seals and caulking of the windows had "turned to a soft rubbery bubblegum-like consistency and br[oke] into strands." (DE #55-2, ¶11.) The Wendts' home subsequently experienced condensation in the windows, and on cold days and nights, condensation would drip from the windows and form small puddles inside the home. (*Id.*, ¶13.) The Wendts contacted Pella Windows and various contractors regarding these problems, and were advised that replacing the windows and doors would be less expensive than repairing them. The Wendts replaced the windows and doors, which caused damage to the siding shingles covering the home's exterior, some interior woodwork and other parts of the home's interior. The Wendts replaced the damaged siding shingles, damaged interior woodwork and repainted and re-stained parts of the home's interior.

The Wendt Defendants filed a lawsuit against the Gallas Defendants in LaPorte County Superior Court No. 2 under Cause No. 46D02-1303-CT-508 ("underlying lawsuit"). The complaint in the underlying lawsuit alleges that the Gallas Defendants carelessly and negligently allowed chemicals intended to clean the glass in the windows of their home to come in contact with the other portions of the windows and damaged them, including the window frames, casings, trim and sills. While the complaint only addresses the windows of the Wendts' home, it is undisputed that the Wendt Defendants also allege damage to the glass doors of the

home in the underlying lawsuit. The Wendt Defendants seek to recover the cost to remedy and repair the damage to the windows, doors, siding shingles, interior woodwork and interior trim, and all other damages they suffered.

The Gallas Defendants submitted a claim to Celina for the defense of and indemnity for the underlying lawsuit. On April 22, 2013, Celina agreed to provide defense for the allegations in the underlying lawsuit, subject to Celina's reservation of rights. On June 6, 2014, Celina filed its complaint for declaratory judgment seeking a declaration that it is not legally obligated to defend or indemnify the Gallas Defendants in the underlying lawsuit.

<u>The Policy</u>

Celina had issued an all business coverage insurance policy number 7114353-0 to Finishing Touch as the named insured for the policy period of July 14, 2011, through July 14, 2012 ("Policy"). (DE #50-9.) Gallas and Catherine Gallas were also insureds under the Policy as executive officers, directors and/or stockholders of Finishing Touch. (*Id*. at 100.) The commercial general liability ("CGL") coverage in the Policy states in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" and "property damage" to which this insurance applies. We will have the right and duty to defend the insured in any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

(*Id.* at 92.)  The Policy contains two relevant exclusions, which state that the insurance does not apply to:

> j.   Damage to Property
>      "Property damage" to:
>      . . .
>      (6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>      . . .
>      Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".
>
>      . . .
>
> l.   Damage to Your Work
>      "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

(*Id.* at 95-96.)  The Policy defines "products-completed operations hazard" in relevant part as:

> a.   Includ[ing] all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>      . . .
>      (2)  Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:
>           (a)  When all the work called for in your contract has been completed.
>                . . .
>      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

(*Id.* at 105.)

The Policy defines "property damage" in relevant part as "[p]hysical injury to tangible property, including all resulting

loss of use of that property.  All such loss of use shall be deemed

to occur at the time of the physical injury that caused it. . . ."

(*Id.*)  According to the terms of the Policy, "your work":

    a.   Means:
       (1)  Work or operations performed by you or on your behalf; and
       (2)  Materials, parts or equipment furnished in connection with such work or operations.
    b.   Includes
       (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
       (2)  The providing of or failure to provide warnings or instructions.

(*Id.* at 106.)


## DISCUSSION

### Defense under Reservation of Rights

As an initial matter, the Gallas Defendants maintain that

Celina waived its right to deny insurance coverage, or is otherwise

estopped from denying coverage, because it elected to control the

defense of the Gallas Defendants in the underlying lawsuit under

a reservation of rights.  They rely upon *In re Lodholtz*, 769 F.3d

531 (7th Cir. 2014), to assert that under Indiana law, an insurer

may not control the defense of its insured without acknowledging

coverage.  In *Lodholtz*, the Seventh Circuit describes an insurer's

effort to intervene in an underlying tort litigation while

retaining its reservation of rights:

> A reservation of rights is problematic from the insured's standpoint. It creates a risk that the insurer will not put up a strong defense to the suit against the insured . . . , wishing to economize on legal expense and hoping to avoid having to indemnify the insured at all if the latter is hit with a judgment. Mindful of this danger, the Indiana courts forbid the insurer to control the defense of the insured without acknowledging coverage. *Cincinnati Ins. Co. v. Young*, 852 N.E.2d 8, 13-15 (Ind. Ct. App. 2006); *see also Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629, 638-40 (1st Cir. 1989). Such intervention in the defense of the suit would unfairly restrict the insured, who faces the very real risk of an uninsured liability, and grant the insurer a double bite at escaping liability.

*Id.* at 533 (internal quotation marks omitted).

*Lodholtz* did not resolve the issue raised by the Gallas Defendants, that is, the relationship between an insurer's defense under a reservation of rights and its right to challenge coverage. There, the insurer had attempted to intervene in the underlying tort litigation after making no appearance in the litigation and after the state court had entered a default judgment against the insured. The state court denied the insurer's motion to intervene, and the court of appeals affirmed this decision. *See id*. The insured filed a federal action arguing that the state workers compensation act had deprived the Indiana courts of jurisdiction to entertain the tort litigation. *Id*. The Seventh Circuit held that the jurisdictional issue on which the insurer's suit was based "was resolved against it by the Indiana courts, and that there [was] no ground for a collateral attack by another judicial system on that determination." *Id.* at 534.

Magistrate Judge Nuechterlein considered and rejected the Gallas Defendants' argument in his November 4, 2015, discovery order, correctly noting that *Lodholtz* "applied Indiana law related specifically to the issue of intervention in reaching its conclusion about the control of defense issue." (DE #46 at 8 (citing *Young*, 852 N.E.2d at 13-15).) The Court agrees that *Lodholtz* did not overrule "Indiana's long-standing law on an insurer's ability to protect its right to challenge coverage by defending under a reservation of rights or filing a declaratory action."[2] (*Id.* (citing *Grinnell Mut. Reinsurance Co. v. Ault*, 918 N.E.2d 619, 625 (Ind. Ct. App. 2009)). The Court incorporates by reference the Magistrate Judge's prior ruling regarding this issue. Accordingly, the Court rejects the Gallas Defendants' argument that Celina waived its right to deny coverage or is estopped from denying coverage because it elected to defend the Gallas Defendants in the underlying lawsuit under a reservation of rights.

Policy Exclusions

In Indiana, "[t]he interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment." *Wagner v. Yates,* 912 N.E.2d 805, 808 (Ind. 2009) (citation

[2] The parties agree that Indiana law applies.

omitted).  Indiana courts interpret an insurance contract under the same rules of construction as other contracts. *Westfield Cos. v. Knapp,* 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004) (citation omitted).  Courts "interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract." *Id.*  "[C]lear and unambiguous language in an insurance policy should be given its plain and ordinary meaning, even if those terms limit an insurer's liability." *Everett Cash Mut. Ins. Co. v. Taylor,* 926 N.E.2d 1008, 1012 (Ind. 2010) (citation omitted).  "[A]n ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind. 2002) (citation omitted).

"An insurance company's duty to defend is broader than its duty to indemnify." *Newnam Mfg., Inc. v. Transcon. Ins. Co.,* 871 N.E.2d 396, 401 (Ind. Ct. App. 2007).  "If the pleadings reveal that a claim is clearly excluded under the policy, then no defense is required." *Id.*  "[W]here the insurer is aware of facts, not in the pleadings, which clearly disclose an absence of coverage, it can refuse to defend or clarify its obligation by means of a declaratory judgment action." *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. Ct. App. 1980) (citation omitted).  Courts are to "determine the insurer's duty to defend from the allegations

contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation." *Newnam Mfg., Inc.,* 871 N.E.2d at 401. Indiana courts have considered extrinsic evidence in assessing an insurer's duty to defend. *See Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1267 (Ind. Ct. App. 2010) (considering extrinsic evidence in assessing an insurer's duty to defend); *Selective Ins. Co. of S.C. v. Erie Ins. Exch.*, 14 N.E.3d 105, 113 (Ind. Ct. App. 2014) (same). "[T]he insured has the burden of proving that the coverage applies, and the insurer, if relying on an exclusion to deny coverage, has the burden of demonstrating that the exclusion is applicable." *Bowman, Heintz, Boscia & Vician, P.C. v. Valiant Ins. Co.*, 35 F. Supp. 3d 1015, 1023 (N.D. Ind. 2014) (citation omitted).

Celina argues that it has no duty to defend or indemnify the Gallas Defendants under the Policy for claims made in the underlying lawsuit. The Policy covers "property damage" caused by an "occurrence," which is defined in part as an "accident." (DE #50-9 at 105.) The Defendants contend that the Policy covers the property damage alleged in the underlying lawsuit because it was caused unintentionally.[3] Celina does not dispute that the damage

---

[3]The Wendt Defendants assert that Finishing Touch's allegedly faulty use of OneRestore caused the damages alleged in the underlying lawsuit. The Gallas Defendants reserve the right to

to the windows and doors alleged in the underlying lawsuit constitutes "property damage" under the Policy. (DE #50 at 13 n.6.) Nor does Celina assert a lack of coverage because no "occurrence" took place; rather, it maintains that coverage does not exist based on exclusion provisions in the Policy. (*Id.* at 16 n.11.) Thus, for the purpose of this motion, the Court assumes that the alleged property damage was caused by an "occurrence" under the Policy. *See Sheehan Constr. Co., Inc. v. Continental Cas. Co.*, 935 N.E.2d 160, 171-72 (Ind.) ("faulty workmanship may constitute an accident and thus an occurrence" under a CGL policy), *modified on other grounds,* 938 N.E.2d 685 (Ind. 2010).

Celina argues that the damages alleged in the underlying lawsuit are excluded from coverage under two Policy provisions: the "Damage to Property" exclusion and the "Damage to Your Work" exclusion. "Generally, insurers are allowed to limit liability in any manner which is not inconsistent with public policy." *Hoosier Ins. Co. v. Audiology Found. of Am.,* 745 N.E.2d 300, 309 (Ind. Ct. App. 2001). A coverage exclusion is usually an affirmative defense, with the insurer bearing the burden of proof. *Id.* "[A]n unambiguous exclusionary clause is ordinarily entitled to enforcement." *Id.* However, exclusions must be plainly expressed and clear, and any doubts as to coverage will be construed against

_____

dispute liability for the alleged damages, and the alleged damages themselves, in the underlying lawsuit. (DE #56 at 1-2.)

the insurer. *Id.*

The Damage to Property exclusion excludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (DE #50-9 at 96.) Defendants assert that this exclusion does not apply here because it "does not apply to 'property damage' included in the 'products-completed operations hazard'" ("PCOH"). (*Id.*) The Policy defines the PCOH to include property damage arising out of "your work," except for "[w]ork that has not yet been completed." (*Id.* at 105.) "Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." (*Id.*) Because the Damage to Property exclusion does not apply to property damage included in the PCOH, the exclusion applies only if the insured's work has not been completed.

Defendants maintain that Finishing Touch's work at the Wendts' home was complete under the PCOH because it was work that needed correction, but was otherwise completed. Celina acknowledges that the Damage to Property exclusion only applies if the insured's work is not yet complete, and does not dispute that Finishing Touch's work was complete under the PCOH. (DE #59 at 3 n.8.) Because the parties do not dispute that (1) the Damage to Property exclusion only applies where the insured's work has not been completed, and (2) Finishing Touch's work was complete under

the PCOH, the Court finds that the Damage to Property exclusion does not apply here.

Turning to the Damage to Your Work exclusion, this provision excludes coverage for property damage to "'your work' arising out of it or any part of it and included in the [PCOH]."[4] (DE #50-9 at 96.) In *Indiana Insurance Company v. DeZutti*, 408 N.E.2d 1275 (Ind. 1980), the Supreme Court of Indiana considered whether a similar exclusionary clause eliminated coverage for an insured's faulty workmanship.[5] There, the insured was a general contractor who built and sold a house that subsequently suffered damage due to improper construction of the footings. *Id.* at 1276. The court considered the insured's CGL policy and explained:

> What is covered by the policy is defective workmanship which causes personal injury or property damage not excluded under some provision of the policy. So if the insured's breach of an implied warranty results in damage to property *other than* the insured's work or product which is excluded by [the exclusionary clauses], the policy would provide coverage. To hold otherwise would effectively convert the policy into a performance

---

[4] Unlike the Damage to Property exclusion, the Damage to Your Work exclusion applies to property damage "included in the [PCOH]." (DE #50-9 at 96.) Thus, this exclusion may apply where, as here, it is undisputed that the insured's work was completed.

[5] *DeZutti* addressed an exclusionary clause similar to the Damage to Your Work exclusion, which provided that the policy did not apply to "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith. . . ." 408 N.E.2d at 1277. Another exclusionary clause at issue in *DeZutti* provided that the policy did not apply to "property damage to the named insured's products arising out of such products or any part of such products." *Id.*

> bond or guarantee of contractual performance and result
> in coverage for repair and replacement of the insured's
> own faulty workmanship.  This was not the intent and
> understanding of the parties at the time the policy was
> purchased.

*Id.* at 1279 (emphasis added).  "[T]he costs attendant upon the repair or replacement of the insured's own faulty work is part of every business venture and is a business expense to be borne by the insured-contractor in order to satisfy customers.  It is a business risk long excluded by comprehensive liability policies." *Id.*  The court noted that "[t]he same neglectful craftmanship may cause both a business expense of repair and a loss represented by damage to persons and property other than the insured's own product or work."  *Id.*  It explained that the policy "does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident."  *Id.*  (citing *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 796 (N.J. 1979)).

The court held that the exclusionary clauses clearly excluded "coverage for damages to the insured's product or work when such damages are confined *to* the product or work and caused *by* the product or work, or *any part thereof*.  It is only damage to *other* property arising out of the insured's product or work which would be covered."  *Id.* at 1280 (emphasis in original).  Whether an exclusion applies "depends upon the meaning of the insured's 'work' which . . . is determined by who the insured is."  *Id.*  "[T]he exclusion applies to what the insured or those on his behalf worked

upon or produced." *Id*. The court considered whether the insured's "work" was the entire house that he had built, or only the footings. It found that coverage was excluded because the insured was a general contractor and his work was the entire house. *Id*. at 1280-81; *see Sheehan Const. Co.*, 935 N.E.2d at 166 (noting that no coverage existed in *DeZutti* because "faulty workmanship by a contractor was specifically excluded based on the clear and unambiguous 'business risk' exclusionary clauses"); *T.R. Bulger, Inc. v. Indiana Ins. Co.,* 901 N.E.2d 1110, 1115 (Ind. Ct. App. 2009) ("business risk [of a contractor's faulty work] is born by the contractor and is not insured by a CGL policy"); *Transcontinental Ins. Co., RTW Indust., Inc.,* No. 1:02CV01733, 2004 WL 1638221, at *7 (S.D. Ind. Jun. 30, 2004) (finding insurer had no obligation to defend or indemnify insured where CGL policy excluded the type of damage caused by insured's work to insured's product).

The parties agree that the Damage to Your Work exclusion does not exclude coverage for damage to other property arising out of Finishing Touch's work. However, they disagree as to whether the damages alleged in the underlying lawsuit "are confined to [Finishing Touch's] work and caused by the . . . work," and thus, fall within the Damage to Your Work exclusion. *DeZutti*, 408 N.E.2d at 1280. The application of this exclusion depends upon the meaning of Finishing Touch's "work." *See id*.

The Policy defines "your work" in relevant part as "work or operations performed by you or on your behalf." (DE #50-9 at 106.) Celina maintains that Finishing Touch's wiping of the window and door frames after spraying the glass with OneRestore was work performed by Finishing Touch, and thus, any resulting property damage is excluded from coverage under the Damage to Your Work exclusion. In support of this position, Celina relies upon *Alverson v. Northwestern National Casualty Company*, 559 N.W.2d 234 (S.D. 1997). In that case, a masonry subcontractor damaged the windows of a residence while trying to clean them after splattering them with mortar. *Id.* at 236. In assessing whether the subcontractor's CGL insurance policy covered the damage to the windows, the Supreme Court of South Dakota reasoned:

> [The policy] excludes damage to any property, which includes the windows, that must be replaced because "your work" was incorrectly performed on it. . . . "[Y]our work" is defined in the policy as "work or operations performed by you or on your behalf." The window cleaning was "work" done "by" Alverson and his employees and it was done as part of the masonry contract. *While work on windows was not included in the masonry contract, it became Alverson's work to clean them incidental to the contract.*

*Id.* (emphasis added). The court found that the exclusion applied and there was no coverage. *Id.*

Celina also relies on *Lusalon, Inc. v. Hartford Accident and Indemnity Company,* 511 N.E.2d 595 (Mass. 1987), in which the insured was a subcontractor that was hired to install concrete

block at a construction site. While installing concrete block, the insured accidentally splattered mortar on an adjacent door and window frames. *Id*. at 596. The insured used a cleaning agent to remove the splattered mortar, but failed to properly remove the cleaning agent from the door and window frames. *Id*. When the door and window frames were painted, the paint peeled as a result of the cleaning agent. *Id*. The insurer argued that a policy exclusion eliminated coverage for property damage to "that particular part of any property, the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured." *Id*. at 597. The insured maintained that the alleged property damage was not part of its work product. The court disagreed. "[C]ontrary to [the insured's] characterization, [the insured's] work did include cleaning up the mortar which its employees splattered on the door and window frames." *Id*. at 598. The *Lusalon* court affirmed summary judgment in favor of the insurer where "[t]he insurance furnished was not intended to indemnify the plaintiff for damages resulting because the plaintiff furnished defective . . . workmanship in the cleanup and related work." *Id*. at 599. In both *Alverson* and *Lusalon*, the policy exclusions applied to the insured's work on windows, even though the insureds had not been hired to do such work.

Defendants do not address or distinguish *Alverson* or *Lusalon*.

Rather, they rely upon *DeZutti* to argue that the Damage to Your Work exclusion does not apply here. They maintain that Finishing Touch's work was limited to glass cleaning because Finishing Touch was hired to clean only the glass in the windows and doors of the Wendts' home. They liken Finishing Touch to a subcontractor, whose work "is merely a component part of a larger work or product. Thus, a subcontractor's exclusion would be less encompassing and any damage to the larger work or item caused by his product or work would be damage to other property which would fall outside [the business risk] exclusions." *DeZutti,* 408 N.E.2d at 1280.

According to Defendants, the Damage to Your Work exclusion should not apply because the alleged damages were not to Finishing Touch's work of cleaning glass, arising out of it or any part of it. It is undisputed that Finishing Touch's use of OneRestore removed the spots from the glass in the windows and doors of the Wendts' home, and did not damage the glass itself. Other parts of the windows and doors were allegedly damaged, including the window sills, frames, caulking and seals. Defendants insist that because the alleged damages are not "to" Finishing Touch's work of glass cleaning and are not confined to that work, the Damage to Your Work exclusion does not apply.

Defendants rely on *Travelers Insurance Company v. Volentine*, 578 S.W.2d 501 (Tex. Ct. App. 1979), in which the insured incorrectly repaired valves in a car, causing the valves to

malfunction and destroy the engine.  When the car owner sued the insured, the insurer claimed that the "your work" exclusion precluded coverage.  The Texas Court of Appeals noted that the underlying lawsuit between car owner and the insured did not allege that the insured "performed work on any part of the engine except the valves." *Id*. at 504.  The court held that because the insured's work was limited to repairing only the valves in the engine, the policy afforded coverage despite the "your work" exclusion.  *Id.; see also Am. Home Assurance Co. v. Cat Tech*, *L.L.C.,* 660 F.3d 216, 221 (5th Cir. 2011) (holding "'your work' exclusion only precludes coverage for damage to that portion of Ergon's property upon which Cat Tech performed repair services, defective or otherwise.  It does not preclude coverage for any damage to Ergon's property that Cat Tech did not repair or service.")

Defendants assert that "it was not necessary for Gallas or Finishing Touch to touch or come into contact with any portion of the windows or doors other than the glass in order to perform the limited service of removing white spots from the glass."  (DE #55 at 22.)  But the undisputed evidence demonstrates otherwise.  As Gallas testified, "when [Finishing Touch employees] do a window-cleaning job, the water is going to get on the frame, no matter what you do.  So, *they're trained to wipe off the frame*." (DE #50-5 at 7 (emphasis added).) When Gallas instructed the employees to use OneRestore, he told them to "clean the window like you would

normally clean the window, squeegee it off and wipe it off, wipe off the frames with their rags." (*Id.* at 5.) Finishing Touch employees also testified that they wiped the frames when they cleaned glass, and when they applied OneRestore to the glass in the windows and doors of the Wendts' home. (*See* DE #50-3 at 7-9; DE #50-4 at 6.) When asked what precautions were taken to prevent OneRestore from coming into contact with the window frames, sills, and cladding, one employee explained, "[w]e just dried it off with a towel. Any water or liquid that comes out, we dried it off with a towel." (DE #50-3 at 8.)[6]

The Policy states that "your work" "[m]eans . . . [w]ork or operations *performed by* you or on your behalf." (DE# 50-9 at 106 (emphasis added).) It does not limit "your work" to work that the insured was hired to do. Moreover, Indiana courts apply business risk exclusions "to what the insured or those on his behalf *worked upon* or produced." *DeZutti*, 408 N.E.2d at 1280 (emphasis added). Given the undisputed evidence that Finishing Touch's employees

_____

[6]Celina notes that to the extent that the Defendants were to argue that Finishing Touch did not work on the window caulking and seals, these parts of the windows were encompassed within the framing structure of the windows upon which Finishing Touch worked. (DE #59 at 6 n.10.) Defendants do not distinguish between the frames surrounding the glass and the caulking and sealing, but rather, maintain that it was not necessary for Finishing Touch to come into contact with any portion of the windows or doors other than the glass in order to remove the spots from the glass. (DE #55 at 22.) As explained above, the undisputed evidence shows that Finishing Touch did come into contact with other portions of the windows and doors when cleaning the glass.

were trained to wipe the frames surrounding the glass they cleaned, and that they wiped off the OneRestore that came in contact with the frames, sills and cladding, the Court finds that Finishing Touch performed work upon the frames, sills and cladding surrounding the glass of windows and doors of the Wendts' home. As such, any property damage resulting from Finishing Touch's work upon the frames, sills and cladding of the windows and doors of the Wendts' home is eliminated from coverage by the Damage to Your Work exclusion.[7]

Celina also argues that the Wendt Defendants' alleged damages to the shingle siding, interior woodwork, painting, and loss of use, are excluded from coverage. These damages were not caused by OneRestore coming into contact with these parts of the home, but

_____

[7] Celina also maintains that the Damage to Your Work exclusion applies to the damages to the windows and doors surrounding the glass because the damaged parts are "connected together or immediately adjacent to each other so as to constitute a collective unit." (DE #50 at 20 (quoting *Vinsant Elec. Contractors v. Aetna Cas. & Sur. Co.,* 530 S.W.2d 76, 76 (Tenn. 1975) (finding policy exclusion applied to damage to a switchboard because it was "a unit composed of many interrelated and interdependent parts").) Defendants respond that an issue of fact exists as to whether the glass of a window or door is a single unit with the window or door, or a separate item of property. They note that if an insured files a claim for a window in which the glass was broken, the Policy does not cover the replacement of the entire window; rather, it covers the replacement of the glass in the window. (*See* DE #50-9 at 65 (Celina "will determine the value of Covered Property in the event of loss or damage as follows: . . . d. Glass at the cost of replacement with safety glazing material if required by law.").) The Court need not decide this issue because it is undisputed that Finishing Touch's work included wiping down more than just the glass in the windows and doors.

rather, were caused by the replacement of the windows and doors. According to Celina, because the Policy affords no coverage for the damages to the windows and doors, there is also no coverage for the damages allegedly resulting from the replacement of the windows and doors.

The Wendt Defendants maintain that after Finishing Touch allegedly damaged the windows and doors by improperly using OneRestore, the windows and doors experienced serious water condensation problems. They were advised that replacing the windows would be less expensive than repairing them, so they replaced the windows and doors. Replacing them "necessarily caused damage to siding shingles covering the Home's exterior, parts of the interior woodwork, and other parts of the Home's interior." (DE #55 at 5 (citations omitted).) The Wendt Defendants sued the Gallas Defendants in part "for the cost to repair the parts of the Home necessarily damaged by replacing the windows and doors" and "for the temporary living expenses while the Home was uninhabitable during the repair and replacement process." (*Id*. at 6.) Thus, the parties do not dispute that these alleged damages were the result of replacing the windows and doors. While Defendants argue that damages are an issue of fact, the issue before the Court is one of law, that is, whether the Policy excludes coverage for the damages allegedly caused by replacing the windows and doors.

The Court has determined that any property damage resulting from Finishing Touch's work upon the frames, sills and cladding of the windows and doors of the Wendts' home is eliminated from coverage by the Damage to Your Work exclusion. The costs associated with replacing the windows and doors are likewise excluded under Indiana law. As *DeZutti* explained, "the costs attendant upon the repair or replacement of the insured's own faulty work is part of every business venture and is a business expense to be borne by the insured-contractor in order to satisfy customers. It is a business risk long excluded by comprehensive liability policies." 408 N.E.2d at 1279; *see Sheehan Const. Co.,* 935 N.E.2d at 166 (describing *DeZutti* as "holding that the CGL policy did not provide coverage to correct, repair or replace the contractor's own poor workmanship"); *Jim Barna Log Sys. v. Gen'l Cas. Ins. of Wis.,* 791 N.E.2d 816, 823-24 (Ind. Ct. App. 2003) (discussing the allocation of risk in a CGL policy).

Because the Court holds that the Damage to Your Work exclusion eliminates coverage for the claims alleged in the underlying lawsuit, that is, claims of damage to the windows and doors of the Wendts' home, and damage attendant upon the replacement of the windows and doors, the Court will enter declaratory judgment in favor of Celina.

CONCLUSION

For the reasons set forth above, Celina's Motion for Summary Judgment (DE #49) is **GRANTED**. The Clerk of the Court is **DIRECTED** to enter a **DECLARATORY JUDGMENT** in favor of Celina declaring that under insurance policy number 7114353-0, The Celina Mutual Insurance Company has no duty to defend or indemnify Daniel L. Gallas, Catherine D. Gallas, and/or Finishing Touch Cleaning Service, Inc., against claims asserted by Geoffrey Wendt, Nadia Wendt and Windham Bremer as trustee of The Zenonas Puzinauskas Daughters' Family Trust (whether individually or jointly) in case number 46D02-1303-CT-508 in the LaPorte County, Indiana, Superior Court.


DATED: **January 30, 2017**          **/s/ RUDY LOZANO, Judge**
                                     **United States District Court**